Moffett et al., Appellants, *v.* Peirce et al.

Argued December 2, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. Webster Jones,* with him *James A. Walker,* for appellants.

*Morris Wolf,* of *Wolf, Block, Schorr & Solis-Cohen,* for appellees.

OPINION BY MR. JUSTICE MAXEY, January 29, 1942:
This case began by a bill for an accounting after the dissolution of a partnership by the death of a co-partner. The appeal is from a final decree ordering the defendants to pay to each of the plaintiffs the sum of $2,798.69 with interest from August 9, 1940, and also to indemnify the plaintiffs by bond in the sum of $25,000 against loss

by reason of partnership obligations, etc. Plaintiffs' appeals are based chiefly on the allegations that the sums awarded to them are too small. Each plaintiff owns a one sixth interest in the partnership.

It was formed as a business college on October 29, 1934, and traded as the Peirce School. It was dissolved by the death of Caleb C. Peirce, one of the partners, on February 16, 1938. The partnership agreement provided that upon the decease of any of the partners, the surviving partners shall have one year within which to make an accounting to and settlement with the executors or administratrix of the deceased copartner. Plaintiffs complained in their bill that "no settlement of the said partnership accounts has ever been made between the plaintiffs and the defendants, and since the said dissolution the plaintiffs have repeatedly applied to the defendants for an audit and final settlement, but defendants have absolutely refused so to account and settle. The said defendants have, for more than three years last past, possessed themselves of the said copartnership books and have refused to permit the plaintiffs to have a complete and detailed audit, and have also refused to render to the plaintiffs a correct account of the copartnership monies received by them. The said Thomas May Peirce, Jr., has withheld deposits of receipts totaling upward of $20,000 for periods of several months on various occasions. Since the dissolution of the said copartnership on February 16, 1938, by the death of Caleb C. Peirce, there has been and still is a large balance due from the said defendants to the plaintiffs herein in respect to the copartnership assets."

Plaintiffs prayed for "A. That an accounting be taken of all and every of the co-partnership dealings and transactions from September 1, 1935, unto the present time, and that the defendants, Mary B. Peirce, Ruth Peirce Taylor, Thomas May Peirce, Jr., each individually and as surviving copartners, trading as Peirce School, and Mary B. Peirce, Ruth Peirce Taylor and

Thomas May Peirce, Jr., as Executors Under the Will of Caleb C. Peirce, Deceased, be directed to pay to the plaintiffs that which shall, upon such accounting, appear to be due to the plaintiffs; B. That some proper person be appointed the receiver and liquidate the said partnership; C. General relief."

The answer of the defendants averred that "there have been negotiations looking to an amicable agreement for the settlement of the interest of the Estate of Caleb C. Peirce, deceased, but no agreement ever was arrived at. Such negotiations were in progress when the Bill in this case was filed by the plaintiffs without any notice to the defendants." The answer also denied any misuse of the monies of this partnership and denied "that there is any balance due from the defendants to the plaintiffs in respect to the Copartnership assets" and prayed that the bill be dismissed.

The matter came before Judge ALESSANDRONI on August 6, 1940. He handed down a decree refusing to appoint a receiver and appointing Lybrand, Ross Bros. & Montgomery, Accountants, to state an account of the partnership interest in the Peirce School, setting forth the interest of the claimants and Mary B. Peirce et al., executors under the will of Caleb C. Peirce, deceased, in accordance with the terms of the partnership agreement.* On September 13, 1940, this firm of accountants having performed the duties assigned it submitted its report to the court. The claimants on October 11, 1940, filed a number of exceptions to the account as stated by these accountants, because of the fact that the account carried the fixtures of the Peirce School as of no value whereas the plaintiffs state they believe the reasonable value thereof is $75,000. Later the court granted leave to take testimony in support of the exceptions. Testimony was taken and later requests for findings of fact

---

* The partnership agreement provided (par. 9) : "In case the parties are unable to agree upon auditors, Lybrand, Ross Bros. & Montgomery shall be engaged."

and conclusions of law were filed. At the hearing evidence was received as to the fair market value of the land and buildings used by the Peirce School and of other adjacent buildings owned by it. Lionel Friedmann was called by the defendants as a real estate expert. He placed the fair market value of the three separate properties of the School situated at, respectively, 1420, 1408 to 1414, and 1428 to 1434 Pine Street, at $180,200 (i. e., $96,000, $38,600 and $45,600 each). Samuel T. Hall, called by defendants, fixed the respective values as $70,-328, $29,600 and $46,600 or a total of $146,528. The defendants called Leon J. Wilcox to testify as to the value of the equipment, furniture and furnishings of the Peirce School. His estimate was $37,411.67. Plaintiffs offered no rebuttal to the foregoing testimony as to the value of the real and personal property of the partnership.

Among the findings of fact by the Court are the following: (15) The fair market value of the real estate is $180,200. (12) The fair market value of the furniture and fixtures of the School is $37,411.67. (16) The value of the assets of the partnership as of August 9, 1940 (including the above two items), was $249,220.83. (17) The liabilities of said copartnership is as set forth on balance sheets of Lybrand, Ross Brothers & Montgomery amount to $278,132.99. (22) The liabilities as corrected amount to $232,428.47. (23) The net worth of the partnership as of August 9, 1940, was $16,792.16 and the interest of each of the plaintiffs was $2,798.69.

Among the conclusions of law was "(8) The defendants are not chargeable with any item of good will."

Plaintiffs filed numerous exceptions to the findings and conclusions of law of the chancellor. The exceptions were all dismissed by the court in banc. In the opinion dismissing the exceptions, Judge ALESSANDRONI correctly stated: "The plaintiffs offered no testimony in support of their exceptions other than the admissions contained in the pleadings, the authority of counsel for the defendants to conduct negotiations toward settlement, and a

letter written by counsel for the defendants attempting to settle the controversy. The defendants offered evidence of the fair value of three parcels of real estate as well as the fair value of the equipment, furniture and furnishings of the school. . . . The report of the auditors constituted an account stated. In *Leinbach v. Wolle,* 211 Pa. 629, the court stated that where an account of partnership transactions is prepared by an expert selected by all of the parties in interest and a copy of the account is given to each of them, the account is an account stated and although it may not have been expressly accepted, failure to object is the equivalent to consent. The objections of the plaintiffs to the report of the auditors was the equivalent to an approval of that to which no exception was taken. Having offered no testimony in support of the majority of their exceptions before the auditing judge, they have again filed the same exceptions. Having once been given an opportunity to sustain their position, they are now bound by the adjudication and the findings of fact contained therein which were based upon the evidence presented. There is no merit to the contention that the estate of the deceased partner was not entitled to share in the profits earned while its capital investment continued. Article 11, Section 42, of the Uniform Partnership Act vests in the estate of the deceased partner the option of receiving either interest on the capital investment or in lieu thereof a share of the profits: *Froess v. Froess,* 289 Pa. 69; *Kreinson v. Commercial National Bank,* 323 Pa. 332. . . . The plaintiffs offered no testimony upon which a court could base a finding of the value of good will. The plaintiffs, after having agreed to the procedure hereinbefore set forth are now dissatisfied with the value of their partnership interest as so determined. They seek at this time to have another method of valuation employed by having a receiver appointed to sell the assets."

There was nothing in the record to move the court below to appoint a receiver. In *Beaumont v. Beaumont,*

166 Pa. 615, 31 A. 336, this court said in respect to the refusal in that case to appoint a receiver: "Such appointments rest in the sound discretion of the court; and, in exercising such discretion, it proceeds cautiously and is governed by a view of the whole circumstances of the case. No positive or unvarying rule can be laid down as applicable to all cases. If there be no danger to the property and nothing to show the necessity or expediency of appointing a receiver, none should be appointed: Kerr on Receivers, pp. 4, 5, 9; Bispham's Eq., sec. 577."

The court correctly interpreted the applicable sections of the Uniform Partnership Act of March 26, 1915, P. L. 18, 59 sections one et seq. Section 38 of that act (59 PS 100) provides: "When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners": *Froess, Admx., v. Froess,* 284 Pa. 369, 131 A. 276 (First Appeal), is cited by the appellant. There is nothing said in that case which casts any doubt on the correctness of this decree. That was a bill for a receiver and an accounting by the administratrix of the estate of a deceased partner against the surviving liquidating partner. The administratrix demanded "her husband's share of the assets, with interest on the value thereof from the time of dissolution, rather than a share of any profits, and, subsequently, a formal election to so claim was filed in writing." The only principles of the law of partnership which this court reiterated in that case *and which are applicable here* are these: "The partnership was dissolved by the death of the copartner. That this result followed appears by the Uniform Partnership Act (March 26, 1915, P. L. 18, section 31), and it was equally

true before that legislation became effective: *Shipe's App.*, 114 Pa. 205; *Mamaux's Est.*, 274 Pa. 533; *Underdown v. Underdown*, 279 Pa. 482. . . . The interest of the decedent is fixed by a valuation as of the time of the dissolution (*Hay's App.*, supra), and all members of the firm are entitled to a part of the surplus of assets over the amount necessary to pay the creditors of the firm: Partnership Act, sections 38, 40, also sections 18, 25; *Parker v. Broadbent*, 134 Pa. 322." In that case there was no sale of the assets for the purpose of ascertaining the value of the deceased partner's interest. The value of the partnership assets was based on the audit or computation from the books as of the date of dissolution. This court said of a request made two months after filing findings of fact and conclusions of law, for leave to amend the answer "so as to set forth the legal claim that the value of the assets must be determined by the sale price at the time of actual liquidation", it "was properly refused as too late: *Berlin S. Co. v. Rohm*, 272 Pa. 24. It may also be noted that it proposed to consider a calculation upon an improper basis: *Hay's App.*, 91 Pa. 265."

The findings of fact upon which the decree appealed from is based are completely supported by the testimony. Plaintiffs prayed for an accounting and their prayer was granted. They offered no evidence disputing the value of all the assets or the amount of the liabilities as that value was testified to by defendants' witnesses or was shown in the report of the official auditor. The court based its findings of fact on that evidence of *defendants'* witnesses *which was most favorable to plaintiffs' interests*. Since the court accepted that testimony the plaintiffs have no cause to complain. The result reached by the court followed with mathematical exactness the evidence so accepted. There were no reasons advanced which should have moved the court to appoint a receiver and order a public sale of assets.

The decree is affirmed at appellants' cost.